IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHAWNAY RAY AND KANTICE JOYNER, *on their own behalf and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE US, INC.<br><br>Defendant. | Case No. 1:19-cv-01299-JKB<br><br>Judge: James K. Bredar |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION**

Pursuant to 9 U.S.C. §§ 3 and 4 and Federal Rule of Civil Procedure 12(b)(1),[1] Defendant T-Mobile US, Inc. ("T-Mobile" or "Defendant") hereby respectfully moves this Court for an Order: (i) compelling individual arbitration of Plaintiffs Shawnay Ray's ("Ray") and Kantice Joyner's ("Joyner") (collectively "Plaintiffs") claims brought under the Federal Communications Act ("FCA"), 47 U.S.C. § 222, as required by their agreements with T-Mobile; and (ii) dismissing their claims, or, in the alternative, staying this litigation until arbitration is complete.

**I.     INTRODUCTION**

This case arises directly from Plaintiffs' status as "T-Mobile customers" and their use of wireless services offered by Defendant. Compl. ¶ 2.  As T-Mobile customers, each Plaintiff accepted T-Mobile's Terms and Conditions ("T&Cs").  In so doing, they agreed to arbitrate on an individual basis any dispute related to T-Mobile's services and to waive their right to participate

---

[1] Under a 12(b)(1) motion, the Court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).  Such "jurisdictional facts" are included in the declaration of Christopher Muzio filed concurrently herewith.

in a class action unless they timely opted out of the arbitration procedure outlined in the T&Cs. Neither Plaintiff elected to opt out. Accordingly, Plaintiffs have brought their grievances to the wrong forum and their claims should be dismissed in favor of arbitration.

The scope of Plaintiffs' agreements to "resolve any dispute with [T-Mobile] through binding arbitration" is broad, encompassing "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, [T-MOBILE'S] PRIVACY POLICY, [T-MOBILE'S] SERVICES, DEVICES OR PRODUCTS**." *See* Declaration of Christopher Muzio filed herewith ("Muzio Decl.") ¶ 11; Ex. A at 1, 3 (T-Mobile T&Cs, effective as of August 22, 2018) (emphasis in original). Plaintiffs' claims fall squarely within the ambit of the arbitration agreement. Specifically, Plaintiffs allege that T-Mobile "fail[ed] to safeguard highly personal and private consumer geolocation data" that was "collected from [T-Mobile] users' cell phones." Compl. ¶¶ 3, 5, 76-80. Plaintiffs' claims directly implicate T-Mobile's T&Cs, including T- Mobile's Privacy Policy, and are thus subject to the parties' arbitration agreement. *See, e.g.*, Compl. ¶¶ 22-29.

The Federal Arbitration Act ("FAA") requires enforcement of arbitration agreements and prescribes that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (acknowledging that § 2 evidences a liberal federal policy favoring arbitration). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (internal citations and quotation marks omitted). For the reasons discussed below, all prerequisites to the application of the FAA's provisions compelling

arbitration have been satisfied. Accordingly, T-Mobile respectfully requests that this Court compel Plaintiffs to arbitrate their individual claims and dismiss the pending litigation.

## II.     FACTUAL BACKGROUND

### A.     *T-Mobile's Terms and Conditions Require Arbitration.*

T-Mobile's T&Cs contain an arbitration provision that requires both T-Mobile and its customers to resolve disputes through binding arbitration. T-Mobile's T&Cs unambiguously require arbitration, unless the customer elects to opt out within the thirty-day period prescribed by the T&Cs to do so. As discussed *infra*, Plaintiffs had the opportunity to opt out of arbitration, but they never did. Muzio Decl. ¶¶ 11-12, 14, 23.

> 1.     *By accepting T-Mobile's Terms and Conditions, customers agree to arbitrate their claims individually.*

The first paragraph of T-Mobile's T&Cs states: "Thanks for choosing T-Mobile. Please read these Terms & Conditions ('T&Cs'), which contain important information about your relationship with T-Mobile, including mandatory arbitration of disputes between us, instead of class actions or jury trials. You will become bound by these provisions once you accept these T&Cs." Muzio Decl. ¶ 9; Ex. A (T-Mobile T&Cs, effective as of August 22, 2018). The T &Cs explain the arbitration procedure as follows:

> **Dispute Resolution and Arbitration. YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST

3

FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES) . . . .

Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline").** You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or online at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue your claim in arbitration or small claims court.**

*Id.* (emphasis in original).

The T&Cs also contain a class action and jury trial waiver:

**CLASS ACTION WAIVER. YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, OR CONSOLIDATED ACTION.** If a court or arbitrator determines in an action between you and us that any part of this Class Action Waiver is unenforceable with respect to any claim, the arbitration agreement and Class Action Waiver will not apply to that claim, but they will still apply to any and all other claims that you or we may assert in that or any other action. **If you opt out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you. Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, or representative proceeding without having complied with the opt out requirements above.**

**JURY TRIAL WAIVER.** If a claim proceeds in court rather than through arbitration, **YOU AND WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.**

*Id*. (emphasis in original).

    2.    *T-Mobile openly provides customers notice of the requirement for arbitration*.

T-Mobile makes its customers aware of the dispute resolution provision through a variety of means, including providing notice and obtaining consent during activation, prominently displaying notices on its receipts, and providing unfettered online access to its T&Cs and policies. Muzio Decl. ¶¶ 8-9, 11-12, 15, 18, 24, 33. For example, when a customer activates a device, T-

4

Mobile provides the customer with a receipt that includes a notice of the arbitration obligations. *Id*. ¶ 15. The receipt expressly provides that "T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS. Muzio Decl. ¶¶ 15, 24; Exs. B, E (Nov. 14, 2018 Activation Receipt for Ray; February 6, 2019 Joyner Acceptance of Service Terms).

  B.  *Plaintiffs Agreed to Arbitrate.*

Plaintiffs are T-Mobile customers. Compl. ¶ 2. Plaintiff Ray has a T-Mobile account ending in 1522 (the "Ray Account"). Muzio Decl. ¶ 5. Plaintiff Joyner has a T-Mobile account ending in 0406 (the "Joyner Account"). *Id*. at ¶ 20. By activating service, Plaintiffs consented to the T&Cs, including the agreement to arbitrate any and all disputes, including those relating to wireless services and T-Mobile's privacy policy. *Id*. at ¶¶ 10, 15, 22-24. As discussed in more detail below, Plaintiffs had full knowledge of the existence of the T&Cs as well as the requirement that they consent to the T&Cs prior to using T-Mobile services. Accordingly, Plaintiffs accepted the T&Cs and arbitration agreement with clear notice of their existence.

As described below, Plaintiffs repeatedly consented to and acknowledged the existence of the arbitration agreement, including multiple times within the last year. In addition to their T-Mobile account activations, Joyner entered into an Equipment Installment Plan Agreement ("EIP Agreement"), and there were at least five recent transactions with Plaintiffs to restore service for non-payment of bills in which Plaintiffs were reminded of their agreement to arbitrate any dispute.

  1.  *Plaintiff Ray agreed to arbitrate.*

On November 14, 2018, Ray activated two lines of service with T-Mobile (lines ending in 1488 and 1544). Muzio Decl. ¶ 5, 15; Ex. B (Nov. 14, 2018 Activation Receipt for Ray). Ray owned both devices at the time of activation. *Id*. When Plaintiff Ray first became a T-Mobile

5

customer and activated service, she accepted T-Mobile's T&Cs, which included an agreement to arbitrate any claims. Muzio Decl. ¶ 10-11. At the time of activation, Ray received a receipt (the "Receipt") from T-Mobile. *Id*. The Receipt included a section entitled "**Disputes**," which outlines T-Mobile's arbitration policy, including the ability to "OPT OUT WITHIN 30 DAYS OF ACTIVATION." *Id*. at ¶ 15; Ex. B (Nov. 14, 2018 Activation Receipt for Ray). Moreover, the Receipt incorporated T-Mobile's T&Cs by stating, "[i]f you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions[.]" *Id*. Ray used T-Mobile service and activated a T-Mobile device and therefore manifested her assent to T-Mobile's August 22, 2018 T&Cs. Ray continued to acknowledge her agreement to be bound by T-Mobile's T&Cs and arbitration agreement on March 10, 2019 and April 23, 2019, when she made payments to restore her wireless phone service, which had lapsed due to non-payment. Muzio Decl. ¶¶ 17-18. T-Mobile sent Ray an electronic receipt following each of these payments. *Id*. at ¶ 17; Exs. C and D (March 10, 2019 Ray Receipt; April 23, 2019 Ray Receipt). Each receipt Ray received from T-Mobile states, "[i]f you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions[.]" *Id*. The receipts also include a section entitled "**Disputes**," which states "T-Mobile REQUIRES ARBITRATION OF DISPUTES unless . . . YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS." *Id*. (emphasis in original). Ray continued to use T-Mobile service, made payments, and reconnected her devices. *Id.* As such, Ray again manifested her agreement to T-Mobile's August 22, 2018 T&Cs.

    2. *Plaintiff Joyner agreed to arbitrate.*

On February 6, 2019, Joyner activated service with T-Mobile (line ending in 4960). Muzio Decl. ¶ 20. When Plaintiff Joyner first became a T-Mobile customer and activated service, she accepted T-Mobile's T&Cs, which included an agreement to arbitrate any claims. *Id*. at ¶¶ 22-25.

At the time of activation, Joyner signed and accepted T-Mobile's Service Terms. *Id*. at ¶ 24; Ex. E (February 6, 2019 Joyner Acceptance of Service Terms). In doing so, she agreed to: "(a) this Service Agreement; (b) T-Mobile's 'Terms and Conditions'; and (c) any terms specific to your Rate Plan or service." Muzio Decl. ¶ 24. Moreover, she expressly agreed that she "received and read [the] Agreement." *Id*. The Service Agreement includes a section titled "Disputes. T-Mobile requires ARBITRATION OF DISPUTES UNLESS YOU OPT−OUT WITHIN 30 DAYS OF ACTIVATION." *Id*. Joyner electronically signed the Service Agreement, manifesting that, by activating the line, Joyner was agreeing to T-Mobile's T&Cs, including, specifically, T-Mobile's arbitration provision. *Id*. Joyner used T-Mobile service and activated a T-Mobile device and therefore affirmatively communicated her assent to T-Mobile's August 22, 2018 T&Cs. *Id*. at ¶ 22. By signing the Service Agreement and specifically agreeing to be bound by T-Mobile's T&Cs, including the arbitration requirement, Joyner clearly indicated her agreement to arbitrate any disputes.

Joyner again confirmed her agreement to be bound by T-Mobile's T&Cs and arbitration agreement on February 7, 2019, when she purchased an LG Stylo on her T-Mobile Account. *Id*. at ¶ 27. In connection with that purchase, Plaintiff signed an Equipment Installment Plan Agreement ("EIP Agreement"). *Id*.; Ex. F. The EIP Agreement included a section entitled "**Dispute Resolution and Arbitration**," which states that the parties agree that "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT." Muzio Decl. ¶ 28; Ex. F (emphasis in original). By signing the EIP Agreement, Joyner clearly indicated her agreement to arbitrate any disputes.

Joyner continued to acknowledge her agreement to be bound by T-Mobile's T&Cs and arbitration agreement on March 7, 2019, March 20, 2019, and April 18, 2019, when she made payments to restore her wireless phone service, which had lapsed due to non-payment. Muzio Decl. ¶ 31-33. T-Mobile sent Joyner an electronic receipt following each of these payments. *Id*. at ¶ 32. Each receipt Joyner received from T-Mobile states, "[i]f you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions[.]" *Id*. at ¶ 33; Exs. G-I. The receipts also include a section entitled "**Disputes**," which states "T-Mobile REQUIRES ARBITRATION OF DISPUTES unless . . . YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS." *Id*. at ¶ 33. Joyner continued to use T-Mobile service, made payments, and reconnected her devices. *Id*. at ¶ 34. As such, Joyner repeatedly manifested her agreement to T-Mobile's August 22, 2018 T&Cs. *Id*.

   3. *Plaintiffs had opportunities to opt out of the arbitration procedure but did not.*

The arbitration procedure and class action waiver do not apply to customers who elect to opt out. The T&Cs explain and provide detailed instruction on the ways to opt out of the arbitration procedure.

> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline").** You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or online at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue your claim in arbitration or small claims court.**

*Id.* ¶ 12; Ex. A at 3 (T-Mobile T&Cs, effective as of August 22, 2018) (emphasis in original).

Plaintiffs had full knowledge of the existence of the T&Cs as well as the requirement that they consent to the T&Cs prior to using T-Mobile services. They had the opportunity to opt out of the arbitration procedures under the T&Cs, but they did not do so. Muzio Decl. ¶ 14, 30.

## III.   ARGUMENT

### A.   *The Federal Arbitration Act Applies and Requires Enforcement.*

Arbitration must be compelled under the FAA:

> if [the defendant] can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted). The FAA represents a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations and quotation marks omitted). For the reasons set forth below, all of these four prongs are satisfied, and the FAA should be applied to compel Plaintiffs to arbitrate here.

### 1.   *Plaintiffs should be compelled to arbitrate their disputes with T-Mobile.*

T-Mobile meets the requirements to compel arbitration, as each of the four prerequisites of *Adkins* is satisfied in this case.

***First,*** Plaintiff filed suit in this Court on May 2, 2019, clearly evidencing a dispute between the parties.

***Second***, there is no question that the T&Cs are written agreements that include binding arbitration provisions. *See* Section II, *supra*. Plaintiffs accepted the T&Cs and arbitration agreement when they activated service with T-Mobile on November 14, 2018 (Ray) and February 6, 2019 (Joyner). Muzio Decl. ¶¶ 10, 22. Although the T&Cs provided opt out provisions,

Plaintiffs never opted out, thereby consenting to the arbitration provisions. *Id*. at ¶¶ 14, 30. The scope of Plaintiffs' agreements to individually "resolve any dispute with [T-Mobile] through binding arbitration" is broad and includes "any and all claims or disputes in any way related to or concerning the agreement, [T-Mobile's] privacy policy, [T-Mobile's] services, devices or products." *Id*. at ¶ 11; Ex. A at 1, 3 (T-Mobile T&Cs, effective as of August 22, 2018) (emphasis omitted). As discussed above, the claims that Plaintiffs assert here fall squarely within the scope of the arbitration agreement.

*Third*, the transactions between Plaintiffs and T-Mobile involve interstate commerce. The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has expansively construed the phrase "involving commerce" as extending the FAA's reach to the full limit of Congress' Commerce Clause power. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 268 (1995). The FAA unquestionably applies to the arbitration agreements at issue here. Indeed, the T&Cs expressly provide that they "affect[] interstate commerce so that the Federal Arbitration Act and federal arbitration law . . . apply." Muzio Decl. ¶ 11; Ex. A at 3. Moreover, the FAA applies because the contract between T-Mobile and each Plaintiff is a contract between citizens of different states. T-Mobile is a Delaware corporation with its principal place of business in Washington. Compl. ¶ 11. Plaintiff Ray alleges that she is a "natural person currently residing in Baltimore County, Maryland." Compl. ¶ 9. Plaintiff Joyner alleges that she is a "natural person currently residing at Harford County, Maryland." Compl. ¶ 10. Contracts between citizens of different states affect commerce, rendering the FAA applicable. *See, e.g.*, *Bobys & Assocs. Inc. v. Paetec Commc'ns Inc.*, No. 8:13-CV-01811-AW, 2013 WL 4543511, at *3 (D. Md. Aug. 26, 2013). Further, the FAA applies because Plaintiffs' contracts with T-Mobile relate to the provision of wireless service across state lines, underscoring that the agreements affect interstate commerce.

10

*See generally*, *Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989) (telecommunications industry constitutes interstate commerce).

**Fourth**, and most obviously, by filing this lawsuit, Plaintiffs have failed to arbitrate this dispute.

T-Mobile thus meets the requirements to compel arbitration under the FAA, and the Court should enforce the arbitration agreements, as required by the FAA and the laws of this Circuit.

2.   *Arbitration clauses should be interpreted in favor of enforcement.*

Even if there were any doubt that the arbitration agreements are enforceable (and there is not), the Court should interpret any ambiguity in favor of enforcement. "The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted). The FAA both "embod[ies]" and declares a "national policy favoring arbitration." *Id.* at 346 (internal quotation marks omitted); *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has interpreted the FAA as reflecting both "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (internal citations and quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (internal citations omitted).

The Supreme Court has consistently recognized this strong public policy in favor of arbitration. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 232-33 (2013); *Concepcion*, 563 U.S. at 339. Maryland law is in accord. *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 152, (2003) ("Maryland's Arbitration Act expresses the legislative policy favoring enforcement of agreements to arbitrate.") (internal quotation marks omitted). To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration

clauses liberally in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). The Supreme Court has instructed that courts should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357. "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *Concepcion*, 563 U.S. at 346 (internal quotation marks omitted). Moreover, the FAA establishes that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013).

> 3. *Dismissal or stay of the action is appropriate because Plaintiffs' claims must be submitted to arbitration.*

Where, as here, a plaintiff asserts claims within the scope of an enforceable arbitration agreement, the court must either stay or dismiss the lawsuit and compel arbitration. *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012). Because all of Plaintiffs' claims are arbitrable, dismissal of this action is appropriate. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 856 (D. Md. 2013); *Focus Music Entm't, LLC v. Streamify, LLC*, No. ELH-18-1241, 2018 WL 6423906, at *17 (D. Md. Dec. 5, 2018) ("Fourth Circuit case law indicates that dismissal, rather than a stay, may be a proper remedy when *all* of the issues presented in a lawsuit are arbitrable.") (internal quotation marks omitted) (emphasis in original)). *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (same); *see also Shebby v. Stifel, Nicolaus & Co., Inc.*, 2018 WL 638291, at *5 (D. Md. Jan. 31, 2018).

Alternatively, this Court should stay the case because Plaintiffs' claims must be submitted to arbitration. The FAA provides that, once satisfied, the suit should be moved into arbitration, and a court "*shall* on application of one of the parties stay the trial of the action." 9 U.S.C. § 3.

(emphasis added). Because Plaintiffs must arbitrate the claims asserted here, Section 3 requires that this case be stayed, if not dismissed entirely.

## CONCLUSION

For all the reasons stated herein, Plaintiffs are contractually required to arbitrate individually, rather than litigate their claims in federal court, much less in a putative class action. Accordingly, T-Mobile respectfully requests that this Court grant its Motion to Compel Arbitration and dismiss or, alternatively, stay this case in favor of arbitration.

Dated: July 8, 2019

Respectfully submitted,

*/s/ Marlynda L. Romero*
Marlynda L. Romero (Bar No. 20808)
Proskauer Rose LLP
1001 Pennsylvania Ave. N.W.
Washington, DC 20004-2533
Tel:   (202) 416-6848
Fax:   (202) 416-6899
mromero@proskauer.com

Bradley I. Ruskin (pro hac vice)
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
Tel:   212.969.3465
Fax:   212.969.2900
bruskin@proskauer.com

Jonathan M. Weiss (pro hac vice)
Proskauer Rose LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:   310.284.4524
Fax:   310.557.2193
jweiss@proskauer.com

*Attorneys for T-Mobile US, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2019, I filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of Maryland on all parties registered for CM/ECF in the above-captioned matter.

                                                       */s/ Marlynda L. Romero*
                                                       Marlynda L. Romero